IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND, DIVISION

| | | |
|---|---|---|
| JANE DOE | : | CASE NO: 1:24-cv-00878-JPC |
| | : | JUDGE: Judge J. Philip Calabrese |
| Plaintiff | : | |
| | : | |
| -vs- | : | BRIEF IN SUPPORT OF |
| | : | MOTION FOR PSEUDONYM |
| CUYAHOGA COUNTY, et al | : | STATUS |
| | : | |
| Defendants | : | |
| | : | |
| | : | |

Now comes Plaintiff, by and through counsel, and hereby submits the following as her reply to Defendant's Brief in Opposition to her request to proceed under pseudonym status. In their Opposition Brief, Defendants argue that the four factors identified in *Doe v Porter*, 370 F.3d 558, 560. For the reasons stated below their arguments must fail.

<u>FIRST PORTER FACTOR</u>

FIRST ARGUMENT

Defendants first argue that Plaintiff should not be granted pseudonym status because they are not challenging government activity. This statement is clearly erroneous.

Section 1983 allows for injured parties to take action against people acting under color of state law. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (*citing* 42 U.S.C. § 1983). "'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" *Id.* (*citing Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted)). Thus, the § 1983 plaintiff bears the burden of showing state action on the part of the defendant. *Tancredi v. Metro. Life Ins. Co.*,

1

316 F.3d 308, 312 (2d Cir. 2003); *see Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes an action 'under color of state law' for § 1983 purposes.").

For the purposes of [S]ection 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate' ('the public function test'). *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (*quoting Brentwood Acad.*, 531 U.S. at 296); *see also Caballero v. Shayna*, No. 18-CV-1627, 2019 U.S. Dist. LEXIS 100110, 2019 WL 2491717, *3 (E.D.N.Y. June 14, 2019) (*quoting Sybalski*); *Herring v. Suffolk County Police Dep't,* No. 17-CV-5904, 2018 U.S. Dist. LEXIS 180971, 2018 WL 7150357, *4 (E.D.N.Y. Oct. 19, 2018) (same). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (*quoting Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)); *Caballero*, 2019 U.S. Dist. LEXIS 100110, 2019 WL 2491717, at *3 (*quoting Fabrikant*).

The first question is whether or not the parties accused of violations of Plaintiff's rights are state actors. Only if the answer to this question is "NO" is there a need for further analysis under the private citizen / public actor test. There is no need for this analysis here.

2

In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, the Supreme Court held that the presence of public officials within the structure of an ostensibly private entity can create such a "pervasive entwinement" with the state as to transform the entity into a state actor. 531 U.S. 288, 291, 297, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001). The Court held that entwinement occurs when "officials acting in their official capacity," id. at 299-300, hold positions of "management and control" over a private entity. *Id*. at 296 (*quoting Evans*, 382 U.S. at 301). Such circumstances will render that entity a state actor for § 1983 purposes despite its "expressly private characterization in statutory law." *Id.* (*citing Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S. Ct. 961, 130 L. Ed. 2d 902 (1995)). *See Thompson v. Davidson Transit Org.*, 563 F.Supp.2d 820, 826-827 (M.D.Tenn. 2008).

The facts here fall well within the *Brentwood Academy* purview of State Actors. In Defendant's answer, movants answered on behalf of not only the individual physicians / hospital workers, but also "Metrohealth Foundation [and] The Metrohealth System." ECF No. 5, PAGE ID# 86. The case caption from the Defendant's answer states that the Metrohealth Foundation does business as MetroHealth Medical Center. ECF No. 5, PAGE ID# 86. Second, MetroHealth Medical Center is the employer of Defendants Eversman, Vallejo, Thaku, and the unnamed Defendants. MetroHealth Medical Center is the safety-net hospital for Cuyahoga County. Complaint #5, ECF No. 1, PAGE ID# 4.[1]

. This Board, which is appointed by Cuyahoga County, a government entity, has "the authority and responsibility for the entire management and control of the organization, and shall

---

[1] About us, METROHEALTH, https://www.metrohealth.org/about-us (last visited Oct. 18, 2024). The "MetroHealth System Board of Trustees is composed of voluntary members appointed by Cuyahoga County Council." See Board and Governance, MetroHealth, https://www.metrohealth.org/about-us/board-and-governance#:~:text=The%20MetroHealth%20System%20Board%20of,a%20term%20of%20six%20years (last visited Oct. 18, 2024)

3

establish such rules for its governance and the delivery of health care services as are necessary and expedient." [2] These Bylaws include a grant of authority for care via Medical Staff Bylaws that the Board must approve. [3] The control is not only regulatory, but monetary. Cuyahoga County controls the funding of MetroHealth's budget, increasing or decreasing it based on the decision of the Council. [4] The Board does not make its own budgetary decisions about funding, but must get approval from Cuyahoga County. "MetroHealth System trustees approved a proposed $2 billion 2024 operating budget Tuesday and authorized submitting it to Cuyahoga County Council for final approval."[5]

This funding is not indirect, but makes all employees of MetroHealth state employees. "Generally to be considered to have acted "under color of state law," a person must be a state or local government official or employee." *Lopez v. Reminger Co., LPA*, N.D.Ohio No. 1:14 CV 542, 2014 U.S. Dist. LEXIS 152594, at *5 (Oct. 28, 2014). As employees of Metrohealth Medical Center, they are eligible to participate in the Ohio Public Employees Retirement System (OPERS). In fact, not only are they eligible, but according to MetroHealth's own website, "Please note: MetroHealth is a county hospital as established by Ohio law, and all MetroHealth employees are required to contribute to Ohio Public Employee Retirement System (OPERS)."

---

[2] The Metrohealth System, MetroHealth, https://www.metrohealth.org/-/media/metrohealth/documents/about-us/board/2024-metrohealth-bot-bylaws-final-1-25-24.pdf?la=en&hash=0F8F523B2850F9D6231EDF22F7B7E89433EF6CF1 (last visited Oct. 18, 2024).
[3] The Metrohealth System, MetroHealth, https://www.metrohealth.org/-/media/metrohealth/documents/about-us/board/2024-metrohealth-bot-bylaws-final-1-25-24.pdf?la=en&hash=0F8F523B2850F9D6231EDF22F7B7E89433EF6CF1 (last visited Oct. 18, 2024).
[4] See Cuyahoga County Council tightens hold on funding for MetroHealth over CEO bonus scandal (Dec. 7, 2022, 1:58 pm), Ideastream,https://www.ideastream.org/news/health/2022-12-07/cuyahoga-county-council-tightens-hold-on-funding-for-metrohealth-over-ceo-bonus-scandal.
[5] Cleveland.com, November 5, 2024, 5:40 p.m. https://www.cleveland.com/metro/2024/11/metrohealth-approves-2-billion-2025-budget-expects-to-end-2024-strong.html#:~:text=CLEVELAND%2C%20Ohio%20%E2%80%94%20MetroHealth%20System%20trustees,year's%20%241.9%20billion%20operating%20budget (last visited Nov. 7, 2024).

4

(emphasis in original). See Welcome New Providers, MetroHealth https://www.metrohealth.org/welcomenewproviders (last visited Oct. 18, 2024). Defendant's have already admitted that the medical providers are employees. ECF No. 17, PAGE ID# 212.

On top of the ownership, control and funding of MetroHealth, the County is involved in symbiotic relationship with MetroHealth. Contractually, MetroHealth is be "the medical home base for Cuyahoga County's foster children". *See* Foster Care Medical Program, MetroHealth, Foster Care Medical Program | The MetroHealth System (last visited Oct. 18, 2024. Part of the claims of Plaintiff are related directly to actions taken by MetroHealth employees subsequent to their interaction with Cuyahoga County Children and Family Services. For the purposes of this analysis, there can be no question that this is a challenge to governmental activity.

SECOND ARGUMENT

Defendant's next argue that even if Defendants are deemed government actors, the suit has no applicability to the general public. This statement is equally erroneous. As Judge Ruiz has noted, child abuse itself is a particularly sensitive topic. *Doe v. Cuyahoga Cty.*, N.D.Ohio No. 1:22-cv-01677, 2023 U.S. Dist. LEXIS 37135, at *6 (Mar. 6, 2023). In *Doe v. Cuyahoga Cty.*, the Plaintiff was challenging the appeal policy for a DCFS determination of child abuse. *Doe v. Cuyahoga Cty.*, N.D.Ohio No. 1:22-cv-01677, 2023 U.S. Dist. LEXIS 37135, at *1 (Mar. 6, 2023). Judge Ruiz weighed the *Porter* factors and determined that the Plaintiff could proceed under pseudonym status. *Doe v. Cuyahoga Cty.*, N.D.Ohio No. 1:22-cv-01677, 2023 U.S. Dist. LEXIS 37135, at *9-10 (Mar. 6, 2023)

At least one Defendant called the child abuse hotline despite seeing the child and discharging them for suicidal ideation. Any discussion of, discovery of, or information regarding that call and the safety plan put in place by at least one Defendant is confidential according to

5

state law. *See* SACWIS, Ohio Department of Job and Family Services, https://sacwis.ohio.gov/sacwis/loginEntry.jsp (last visited Oct. 21, 2024) ("Information contained in SACWIS is confidential and not subject to disclosure pursuant to the Ohio Public Records Act (RC 149.43) or RC 1347.08. Only individuals who are authorized to do so may access the information contained within SACWIS. No person shall access or use information contained in SACWIS other than in accordance with state law and ODJFS rule. No person shall disclose information obtained from SACWIS in any manner not specified by rule. Whoever violates this is guilty of a misdemeanor of the fourth degree.").

For the purposes of this argument, this lawsuit has applicability to the general public.

THIRD ARGUMENT

Next, Defendant's claim that the challenged governmental activity is not applicable to the general public at large, weighing against anonymity. This is also erroneous. According the MetroHealth's 2023 annual report, there were one million four hundred eighty nine thousand four hundred thirty four (1,489,434) patient visits to MetroHealth, of which one hundred forty three thousand two hundred sixty two (143,262) were Emergency Department visits. [6]

In addition, Metrohealth is a Level 1 trauma center that sees approximately 6,000 trauma patients per year.[7] MetroHealth's Level 2 Pediatric Trauma Center has a team that has a child abuse specialist on the team. [8]

---

[6] Metrohealth 2023 Annual Report https://www.metrohealth.org/-media/metrohealth/documents/about-us/annual-report/mh_annual_report_2023_v2_web-mh-2432-2.pdf?la=en&hash=CC5E0B4B31A2B325F50C8CD506695AFAE678B1CD (last visited Oct. 21, 2024).
[7] MetroHealth, https://www.metrohealth.org/trauma-care/adult-trauma-center#:~:text=Our%20Level%20I%20trauma%20center,staffed%2024%20hours%20a%20day (last visited Oct. 21, 2024).
[8] https://www.metrohealth.org/trauma-care/pediatric-trauma-center (last visited Oct. 21, 2024).

To say that the ability of an Emergency Department to remove a child from a parent without due process is not applicable to the general public at large is is to ignore the very nature of the services provided by MetroHealth as a county hospital.  Every parent that has a child visit MetroHealth is at risk for this type of conduct from Defendants. In addition to the visits to MetroHealth, there are at least 2,000 children in foster care in Cuyahoga County currently. [9] Each of those children gets their care from MetroHealth."[10].. Defendants claim that Plaintiff is "challenging the constitutionality of the discreet determinations by healthcare providers with respect to Plaintiff's daughter in this specific case." Memorandum, ECF 17, PAGE ID# 212. This is not accurate. As much as Defendant's would like to frame the case before the Court as a malpractice matter, it is not. The case relates to the custodial determinations made by public officials without court order. The actions of the MetroHealth Defendants violated controlling court orders and changed the legal custody rights of Plaintiff. It was a direct interference with parental rights. To attempt to classify this as a discreet determination of a healthcare provider is minimization to the point of absurdity.  Defendants are state actors who made determinations and removed the child from Plaintiff without notice, due process, or recourse.

FOURTH ARGUMNT

Finally, Defendant's claim that "Plaintiff should not be permitted to name and level accusations at these individuals, subjecting them to reputational harm, while concealing her own identity." Memorandum, ECF No. 17, PAGE ID# 213 is neither part of the standard for pseudonym status nor is applicable here. The first of the three Porter factors is not determinative,

---

[9] Health and Human Services, Cuyahoga County https://hhs.cuyahogacounty.gov/programs/detail/foster-care-and-adoption (last visited Oct. 21, 2024).
[10] See Foster Care Medical Program, MetroHealth, Foster Care Medical Program | The MetroHealth System (last visited Oct. 18, 2024)

and the quotation offered by Defendant is in no way controlling of the first Porter factor. IF it was, anonymity would never be granted in cases against State actors. This is clearly not the case.

SECOND PORTER FACTOR

Defendants next argue that the action does not require the disclosure of Information of the utmost intimacy. This is incorrect as a matter of fact and matter of law. On the factual side, Defendant's claim that Plaintiff has speculative harm and nothing more. ECF no. 17, PAGE ID# 213-14. However, Defendant's neglect to mention that at least one of them signed a safety plan for the child, and that this safety plan may still be in effect. Compl. ECF. No. 1, Para. 65-70, PAGE ID# 9-10. That harm, when coupled with the Defendant's call to DCFS, requires Plaintiff to disclose information regarding a children's services investigation that is confidential under state law. Just like the Plaintiff in *Doe v. Cuy. Cty.*, without a pseudonym, Plaintiff would have to disclose whether or not her name is on the abused child registry. *See Doe v. Cuyahoga Cty.*, N.D.Ohio No. 1:22-cv-01677, 2023 U.S. Dist. LEXIS 37135, at *8 (Mar. 6, 2023).

Ohio Courts have a history of providing pseudonym status to nonparties to a case who are minors. *See Kellough v. Ohio State Bd. of Edn.*, 10th Dist. Franklin No. 10AP-419, 2011-Ohio-431, ¶ 6, fn. 1 (To protect the privacy of the students involved, the Board assigned a pseudonym to each student. We will refer to each student by his pseudonym.); *Brunett v. Brunett*, 2d Dist. Clark No. 2016-CA-14, 2017-Ohio-307, ¶ 2, fn. 1. ("This is not her real name. We use this pseudonym to protect the minor child's identity."); *Wallace v. Wallace*, 12th Dist. Warren No. CA2023-03-030, 2023-Ohio-4777, ¶ 2, fn. 1 ("John" is a pseudonym adopted in this opinion for purposes of privacy and readability."*See In re A.P.*, 12th Dist. Warren No. CA2022-01-002, 2022-Ohio-3181, ¶ 2, fn.1.), *State v. Brand*, 2023-Ohio-557, 209 N.E.3d 762, ¶ 2 (12th Dist.), fn. 2 ("Rose" is a pseudonym adopted in this opinion for purposes of privacy and readability. *See In*

*re A.P.*, 12th Dist. Warren No. CA2022-01-002, 2022-Ohio-3181, ¶ 2, fn.1; *see also* Ohio Constitution, Article I, Section 10a(A)(1) (requiring that victims in the criminal and juvenile justice systems "be treated with fairness and respect for the victim's safety, dignity, and privacy").

This requirement to protect the privacy of children is also prevalent in the Local Rules of Court and the Ohio Rules of Superintendence. *See* RULE 13.2. PRIVACY AND CONFIDENTIALITY, Rule of Superintendence 44, Rule of Superintendence 45, CUYAHOGA COUNTY DOMESTIC RELATIONS COURT RULE 26: Domestic Violence. With regards to the domestic violence CPO cases, the prohibition on public access is not merely a matter of local rule, but is one of Federal Law. Public access to domestic violence protection order cases is governed by 18 U.S.C. 2265, which states in pertinent part:

> Limits on internet publication of registration information. A State, Indian tribe, or territory shall not make available publicly on the Internet any information regarding the registration, filing of a petition for, or issuance of a protection order, in either the issuing or enforcing State, tribal or territorial jurisdiction, if such publication would be likely to publicly reveal the identity or location of the party protected under such order. A State, Indian tribe, or territory may share court-generated and law enforcement-generated information contained in secure, governmental registries for protection order enforcement purposes. The prohibition under this paragraph applies to all protection orders for the protection of a person residing within a State, territorial, or Tribal jurisdiction, whether or not the protection order was issued by that State, territory, or Tribe. .

18 U.S.C.S. 2265(d)(3). (LexisNexis, Lexis Advance through Public Law 118-34, approved December 26, 2023, with a gap of Public Law 118-31). 18 U.S.C. 2265(D)(3). Lexis 2023.

Furthermore, Judge Ruiz, in *Doe v. Cuyahoga Cty.*, found that the "Plaintiff would have to disclose particularly sensitive information—about the DCFS findings and her children—

9

should she have to proceed in this case non-pseudonymously. Moreover, the information contained in Ohio's abused child registry, the Statewide Automated Child Welfare Information System, is "highly confidential and released only under strict guidelines set forth in federal and state rules and law." Ohio's SACWIS Alleged Perpetrator Search (OSAPS), Ohio Dep't of Job & Family Servs., https://jfs.ohio.gov/ocf/childprotectiveservices.stm (last visited Mar. 6, 2023). But if Plaintiff were to proceed without a pseudonym in this litigation, the fact that Plaintiff's name is included on the abused child registry would be information generally available on the Court's public docket." *Doe v. Cuyahoga Cty*., N.D.Ohio No. 1:22-cv-01677, 2023 U.S. Dist. LEXIS 37135, at *7-8 (Mar. 6, 2023).

There can be no question that not only will the medical records become an issue in this matter, but the statements of the parties related to close and private family matters, the effect the actions of Defendants had on further reinforcing the use of the false allegations to further undermine Plaintiff's parental rights in juvenile and domestic relations court (CPO) proceedings. The fact that local and State rules and federal statute create prohibitions on the disclosure of information in these types of cases makes it clear that the second Porter factor favors anonymity.

The Defendant's attempt to use a ruling by the 8th District Court of appeals in Ohio should be completely disregarded. The fact that a suit between two private parties was ruled to have not entitled Plaintiff to anonymity in that matter is not binding on the case at bar. The Defendant's existence as a governmental actor is an overwhelming change in the underlyng facts that determine the factors to be considered. The existence of MetroHealth as a hospital where Plaintiff and/or her family members may have to go for treatment is another. The case cited is currently pending ruling on a jurisdictional request to the Ohio Supreme Court and as already noted, is clearly distinguishable from the case at bar.

10

Finally, any attempt to assert that Plaintiff has not alleged that the allegations were proven false as a matter of law is simply misguided. There is no need to prove the allegations in the complaint at this point in the litigation. That is a question of fact for summary judgment, at the earliest. It has no bearing on the Porter factors. Other than an attempt to distract the Court from the actual factors, there is no reason to even raise this issue at this stage in the proceedings

## THIRD PORTER FACTOR

Defendants have made no argument on this factor and have thus conceded the issue.

## FOURTH PORTER FACTOR

Defendants argue that because Plaintiff is not a minor, that the fourth Porter factor weights against anonymity. As noted above, there are numerous laws protecting the identities of minors and parties to civil protection orders. While Plaintiff's child is no longer a minor, she was at all times relevant to the complaint. The proceedings that were involved were and remain protected. As such, the fourth Porter factor also favors a grant of anonymity.

CONCLUSION

For all of the above identified reasons, denial of pseudonym status is improper. Defendant's arguments rely on misstatements of the facts as alleged, claims that have no place in this early of a stage in the proceedings, are not supported by case law and fail to take into account the numerous state and local rules and well as Federal Statutes identifying the sensitivity and need to for privacy matters involving alleged juvenile abuse, custody and protections orders. As such, Plaintiff's motion should be granted.

    Respectfully Submitted,
    /s/ Jay F Crook

Jay F Crook #0078499
Jay F Crook Attorney at Law, LLC
30601 Euclid Avenue
Wickliffe, OH 44092
PH: 440-725-6203
EMAIL: jaycrooklaw@outlook.com

## CERTIFICATE OF SERVICE

    A copy of the foregoing was sent to all parties via the Court's electronic filing system with a copy being made available through same.

    Respectfully Submitted,
    /s/ Jay F Crook

Jay F Crook #0078499