**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | Case No. 1:24-cv-878 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Jane Doe brings this suit against Defendants Cuyahoga County, MetroHealth, and fourteen others in their individual and official capacities, alleging deprivation of parental rights, including denial of access to her minor child (a teenager at the time of the events at issue), medical treatment, and medical records. Defendants Cuyahoga County, Cuyahoga County Executive Chris Ronayne, and Cuyahoga County Council (collectively, the "County Defendants") move for judgment on the pleadings. Defendants MetroHealth Foundation, The MetroHealth System, Dr. Tanu Thakur, Dr. George Eversman, and Eddairis Vallejo (collectively, the "MetroHealth Defendants") also move for judgment on the pleadings. For the reasons that follow, the Court **GRANTS IN PART** County Defendants' motion for judgment on the pleadings and **GRANTS IN PART** MetroHealth Defendants' motion for judgment on the pleadings.

**STATEMENT OF FACTS**

The Court notes that Plaintiff filed her compliant using the pseudonym Jane Doe. The Court denied Plaintiff's motion to proceed pseudonymously. (ECF No. 28.) However, the Court determined to wait until after ruling on Defendants' motions for judgment on the pleadings to issue a separate order, if necessary, that Plaintiff file an amended complaint using her legal name. (*Id.*) Accordingly, this opinion and order repeats the pseudonyms that are used in the complaint. Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the non-movant, the complaint alleges the following facts.

On May 16, 2022, Jane Doe's daughter, Donna Doe, was transported from Jane Doe's residence to MetroHealth Brecksville Health and Surgery Center after Donna Doe expressed an intent to harm herself. (ECF No. 1, ¶¶ 30–32, PageID #7.) Jane Doe arrived at MetroHealth and provided a copy of a court order, which Plaintiff alleges required the hospital to permit Jane Doe to attend any medical appointments for her daughter. (*Id.*, ¶¶ 32 & 39, PageID #7.) Plaintiff alleges that employees of MetroHealth refused to abide by or acknowledge the court order. (*Id.*, ¶ 40, PageID #8.)

Upon arrival at MetroHealth, Jane Doe was permitted in her daughter's treatment room but was later removed and refused reentry. (*Id.*, ¶¶ 43, 45, 48 & 50, PageID #8.) Jane Doe was placed in an interview room and instructed to stay there. (*Id.*, ¶¶ 51, 61 & 63, PageID #9.) On multiple occasions, she requested to see her daughter. (*Id.*, ¶¶ 49–50, 55–59, PageID #8.) But Plaintiff alleges that the

2

MetroHealth Defendants refused her requests.  (*Id.*, ¶¶ 48, 50, 53 & 56, PageID #8–9.)  Although a supervisor instructed staff to allow her to see Donna Doe pursuant to the court order, Plaintiff alleges that Dr. Eversman overruled that instruction.  (*Id.*, ¶¶ 55–59, PageID #9.)  Under the court order, Plaintiff alleges that she had the authority to make medical decisions for Donna Doe but was unable to do so because the MetroHealth Defendants wanted to interview Donna Doe alone.  (*Id.*, ¶¶ 44–45, PageID #8.)

Robert Roe is Donna Doe's father and is divorced from Jane Doe.  (*Id.*, ¶ 47, PageID #8.)  Plaintiff alleges that the court order gave Jane Doe and Robert Roe the "same terms and conditions" of access to "any record related to the children."  (*Id.*, ¶ 41, PageID #8.)  However, Plaintiff alleges that Robert Roe was granted access to Donna Doe's treatment room for the duration of her medical stay, unlike Plaintiff.  (*Id.*, ¶ 47, PageID #8.)

The summary of Donna Doe's visit to the emergency room lists her diagnosis as "adjustment reaction" and the reason for the visit as "suicidal ideations."  (*Id.*, ¶¶ 72–73, PageID #10.)  At the time of these events, Donna Doe was in a visitation period with Jane Doe.  (*Id.*, ¶ 81, PageID #11.)  Plaintiff alleges that the MetroHealth Defendants "refus[ed]" to release Donna Doe to Jane Doe, instead releasing her to Robert Roe.  (*Id.*, ¶¶ 81 & 140, PageID #11 & #19.)  Dr. Eversman implemented a safety plan, which Plaintiff alleges prevented her from seeing her daughter and exercising her rights under the court order.  (*Id.*, ¶¶ 65–69, PageID #9–10.)  As of the

date she filed the complaint, Jane Doe did not know whether this safety plan remained in effect.  (*Id.*, ¶ 70, PageID #10.)

Cuyahoga County "provides funding directly" to MetroHealth for medical services.  (*Id.*, ¶ 10, PageID #5.)  MetroHealth employees are "enrolled in the Ohio Public Employees Retirement System[.]"  (*Id.*, ¶ 11, PageID #5.)  "Defendant Royane [*sic*] appoints members of" MetroHealth's Board of Trustees.  (*Id.*, ¶ 16, PageID #5.)  "Cuyahoga County Council confirms Defendant Royane's [*sic*] appointments[.]"  (*Id.*, ¶ 17, PageID #5.)

## STATEMENT OF THE CASE

Plaintiff Jane Doe sued the County Defendants and the MetroHealth Defendants bringing three claims for violations under 42 U.S.C. § 1983 and one State-law claim for interference with custody.  (ECF No. 1, PageID #11–19.)  The County Defendants and the MetroHealth Defendants filed separate motions for judgment on the pleadings.  (ECF No. 19; ECF No. 25.)  Plaintiff filed a notice of supplemental authority (ECF No. 35), and Defendants jointly opposed (ECF No. 36).

On the face of the complaint, it is unclear which claims Plaintiff brings against which Defendants.  Plaintiff brings claims for violation of substantive due process under Section 1983 (Claim 1), denial of due process under Section 1983 (Claim 2), municipal liability under Section 1983 (Claim 3), and interference with a custody order under Ohio law (Claim 4).  The Court reads the complaint as bringing Claims 1 and 2 against the MetroHealth Defendants, Claim 3 against the MetroHealth System and the County Defendants, and Claim 4 against the MetroHealth System.  On the

counts against the MetroHealth System, the Court reads the complaint as pursuing derivative or secondary liability against the County Defendants based on the actions of MetroHealth as a publicly funded hospital. Out of an abundance of caution, the Court assumes, however, that Plaintiff intends to pursue each claim against each Defendant.

## ANALYSIS

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)); *see also Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). "In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the Court accepts the factual allegations

of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (citation modified). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

## I.      The MetroHealth Defendants

The MetroHealth Defendants argue that they are not State actors and that Plaintiff failed to allege facts "to establish that Cuyahoga County officials were involved in the medical care decision-making process." (ECF No. 25-1, PageID #304.) Although it is a private entity, Plaintiff argues that MetroHealth acted under color of State law because it exercised powers that are traditionally reserved for the State, specifically the implementation of a safety plan, "deprivation of possession," and "modification of custody of a juvenile[.]" (ECF No. 31, PageID #379.)

The Supreme Court has articulated three different tests, for use in various contexts, to determine whether the challenged conduct may be fairly attributable to the State to hold a defendant liable under Section 1983. *Wolotsky v. Huhn*, 960 F.2d

6

1331, 1335 (6th Cir. 1992) (per curiam).  These tests are:  (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.  *Id.* Although the different tests apply to different facts and circumstances, the Court analyzes each in turn out of an abundance of caution.  A court's determination of State action is a "necessarily fact-bound inquiry[.]"  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).  Nonetheless, the complaint alleges sufficient facts, taken as true, that allow the Court to resolve the issue on Defendant's motion for judgment on the pleadings.

### I.A.    Public Function Test

"Courts generally interpret the public functions test narrowly."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006) (citation omitted).  "[T]he private actor must perform a public function which has traditionally *and* exclusively been reserved to the State."  *Id.*, at 341 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).  "Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action."  *Chapman v. Higbee Co.,* 319 F.3d 825, 833–34 (6th Cir. 2003) (internal citations omitted).  As the Sixth Circuit recognizes, "providing mental health services has not been a power which has traditionally been exclusively reserved to the state."  *Wolotsky,* 960 F.2d at 1335.  Plaintiff has not pled facts, construed in Plaintiff's favor, that the MetroHealth Defendants performed a public function that has traditionally and exclusively been reserved to the State.

7

### I.B.    State Compulsion Test

"[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *West v. Adkins*, 487 U.S. 42, 52 n.10 (1999) (citations omitted); *Wolotsky*, 960 F.2d at 1335. Plaintiff makes no allegations that Cuyahoga County or any other public actor coerced or encouraged the MetroHealth Defendants—let alone did so significantly—with respect to the events at issue.

### I.C.    Symbiotic Relationship or Nexus Test

"Under the symbiotic relationship or nexus test, the action of a private party constitutes [S]tate action when there is a sufficiently close nexus between the [S]tate and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [S]tate itself." *Wolotsky*, 960 F.2d at 1335. "[T]he mere fact that a hospital is licensed by the [S]tate is insufficient to transform it into a [S]tate actor." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Also, being subject to State regulation does not automatically convert a private entity's action into State action. *See Ellison v. University Hops. Mobile Crisis Team*, 108 Fed. App'x 224, 227 (6th Cir. 2004) ("Licensing and regulation are not enough to transform private medical providers into State actors for Section 1983 purposes.") A plaintiff must demonstrate "that the [S]tate is intimately involved in the challenged private conduct in order for that conduct to be attributed to the [S]tate for purposes of [S]ection 1983." *Wolotsky*, 960 F.2d at 1335.

8

Here, as a matter of law, no allegations in the complaint show a sufficiently close relationship between the MetroHealth Defendants and Cuyahoga County or any other public actor to make the MetroHealth Defendants State actors.  State regulation and licensing does not suffice.  Nor does public financial support or public appointment of board members—particularly where, as here, the actions about which Plaintiff complains took place far removed from the actions of the board.

\*    \*    \*

Taking the allegations in the complaint as true, and construing them in Plaintiff's favor in the current procedural posture, the Court determines on the facts and circumstances alleged that the MetroHealth Defendants were not State actors as a matter of law.  Therefore, the Court **GRANTS** the MetroHealth Defendants' motion for judgment on the pleadings (ECF No. 25) on Plaintiff's due-process claims—those asserted in Claims 1 and 2—to the extent that Plaintiff asserts each of those claims against the MetroHealth Defendants.  Again, it is not clear whether Plaintiff brings Claim 3, her *Monell* claim, against the MetroHealth System, but her complaint can be read that way.  To the extent she does, without State action by the MetroHealth Defendants, there is no underlying constitutional violation on which to predicate *Monell* liability.  *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  Accordingly, the Court **GRANTS** the MetroHealth Defendants' motion for judgment on the pleadings on Claim 3—to the extent that Plaintiff asserts that claim against any MetroHealth Defendant.

9

## II.     The Cuyahoga County Defendants

To the extent that Plaintiff brings her due-process claims (Claims 1 and 2) against the Cuyahoga County Defendants, each is differently situated so the Court addresses them separately.

### II.A.   Cuyahoga County Council

To the extent that Plaintiff sues the Cuyahoga County Council in its official and individual capacities, those claims fail as a matter of law.

#### II.A.1. Official Capacity

The County Defendants argue that the Cuyahoga County Council is not *sui juris*, meaning that it lacks the capacity to be sued.  (ECF No. 29, PageID #243–44.) Plaintiff argues that the County Defendants rely on unsettled Ohio case law and that the Court should defer to the Ohio Supreme Court on the unresolved appellate split. (ECF No. 26, PageID #308.)

In legal usage, *sui juris* "means 'possessing full capacity and rights to sue or be sued.'"  *Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 2022-Ohio-3581, 208 N.E.3d 783, ¶ 3 n.1 (quoting *Mollette v. Portsmouth City Council*, 169 Ohio App. 3d 557, 2006-Ohio-6289, 863 N.E.2d 1092, ¶ 1 (Ohio Ct. App.)).  Under Ohio law, a county that "adopt[s] a charter or an alternative form of government," like Cuyahoga County, "is a body politic and corporate."  Ohio Rev. Code § 301.22.  "Such county is capable of suing and being sued[.]"  *Id.*  Accordingly, Cuyahoga County is subject to suit—not the individual members of the Cuyahoga County Council.

Ohio law makes clear that the county council itself cannot be sued.  Absent specific statutory authority, a county council cannot sue or be sued.  *State ex rel.*

10

*Cleveland Mun. Ct. v. Cleveland City Council*, 34 Ohio St. 2d 120, 121–22, 296 N.E. 2d 544 (1973) (recognizing that a city council is "not *sui juris*" and that actions involving the city council "should be brought against the city, or against the existing councilmen"). In this respect, a charter county—like Cuyahoga County—differs from the majority of Ohio counties where the county itself is not subject to suit but the county's "board of county commissioners may sue and be sued, and plead and be impleaded, in any court." Ohio Rev. Code § 305.12; *see also Meade v. Lorain Cnty.*, 707 F. Supp. 3d 728, 735 (N.D. Ohio 2023).

Accordingly, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings on Claim 1 and Claim 2 against the Cuyahoga County Council in its official capacity.

### II.A.2. Individual Capacity

Although Plaintiff does not name as a Defendant any individual member of the Cuyahoga County Council, Defendants argue that any such claims in their individual capacity fail in any event because the complaint fails to include any specific allegations against any individual council member. (ECF No. 19, PageID #246.) In fact, two incumbents (Patrick Kelley and Mike Byrne) were not yet in office when the events at issue in this litigation occurred. (*Id.*, PageID #241 n.2.) "Other than introductory paragraphs, Plaintiff does not mention any County Defendant by name or job duty." (*Id.*, PageID #246.) Plaintiff does not respond to these arguments. (ECF No. 26.)

To state a claim against an individual under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right

11

secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Parties sued in their individual capacities under Section 1983 can be held liable only for their own unconstitutional behavior. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that individual liability "must be based on the actions of that defendant in the situation the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.").

Without specific allegations against any individual council member, Plaintiff fails to allege violations of Section 1983. In any event, she has abandoned any such claims. Therefore, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings on Claim 1 and Claim 2 against the members of the Cuyahoga County Council in their individual capacities.

### II.B. The Cuyahoga County Executive

#### II.B.1. Official Capacity

The County Defendants argue that the claims against the Cuyahoga County Executive in his official capacity are duplicative of the claims against Cuyahoga County and should be dismissed. (ECF No. 19, PageID #250.) Plaintiff argues that the County Executive is an appropriate party to be sued in his official capacity under Rule 25(d), which permits substitution of successors in interest to an elected position. (ECF No. 26, PageID #313.)

12

A suit that is brought against both the entity and the individual in his official capacity "is 'superfluous' and may be dismissed." *Ruffin v. Cuyahoga Cnty.*, No. 1:16-cv-640, 2016 U.S. Dist. LEXIS 117398, at \*6 (N.D. Ohio Aug. 31, 2016) (citing *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013)).  In his official capacity, a county executive functions as an agent of the county, and a claim against the county executive is equivalent to a suit against the county.  *See Williams v. Cuyahoga Cnty.*, 776 F. Supp. 3d 661, 676 (N.D. Ohio Mar. 31, 2025) (dismissing an official-capacity claim against the Cuyahoga County Executive as redundant because Cuyahoga County was also named a defendant, making and the official-capacity claim functionally one against the county).  The same reasoning applies here. Therefore, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings on Claim 1 and Claim 2 against the Cuyahoga County Executive in his official capacity.

### II.B.2. Individual Capacity

Defendant argues that the claims against Chris Ronayne, the Cuyahoga County Executive, in his individual capacity should be dismissed because he was not in office when the incident occurred.  (ECF No. 19, PageID #241 n.1; *Id.*, PageID #249–50.)  For this reason, Plaintiff concedes that these claims fail as a matter of law. (ECF No. 26, PageID #313.)  Therefore, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings on Claim 1 and Claim 2 against the Cuyahoga County Executive in his individual capacity.

### II.C.  Cuyahoga County

To the extent Plaintiff attempts to state a due-process claim against Cuyahoga County in Claim 1 or Claim 2, that effort fails as a matter of law.  Although a State's political subdivisions are persons for purposes of Section 1983, meaning that they are capable of suit, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *see also Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997), the complaint makes no allegation that Cuyahoga County participated in any way in the events giving rise to Plaintiff's claims.  According to the complaint, Cuyahoga County merely funds MetroHealth.

To state a claim under Section 1983 for the violation of a civil right, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Liability must be based on each defendant's own "active unconstitutional behavior."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).  The plaintiff must allege facts suggesting that each defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the [challenged action]."  *Id.*  Even construed in Plaintiff's favor, the complaint makes no such allegation.  Therefore, Cuyahoga County is entitled to judgment on the pleadings in its favor on Claim 1 and Claim 2, to the extent Plaintiff asserts her due-process claims against the County.

With respect to Claim 3, or any more general theory of secondary liability, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Department of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (2018).  "Instead, it is when execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson*, 753 F.3d at 622. The "conclusion that no officer-defendant has deprived the plaintiff of any constitutional right *a fortiori* defeats a claim against the government entity as well." *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799)) (cleaned up).

Plaintiff predicates her claim against Cuyahoga County on the alleged conduct of the MetroHealth Defendants. Because the law does not permit those claims to proceed on the facts alleged, Plaintiff may not maintain a claim against the County either. Therefore, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings (ECF No. 19) on Claims 1, 2, and 3 against Cuyahoga County.

## III.    State-Law Claim

Plaintiff brings one claim under State law (Claim 4) for interference with a custody order in violation of Section 2919.23(A)(1). Again, the Court reads the complaint as stating this claim against MetroHealth. It is not clear that Plaintiff seeks to assert this claim against all the MetroHealth Defendants or the County Defendants. (ECF No. 1, PageID #19–20.) Whatever the case, the Court has supplemental jurisdiction over Plaintiff's State-law claim pursuant to 28 U.S.C. § 1367. Under federal law "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common

15

nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses all of Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiff's State-law claim and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiff's right to pursue the remaining claim in State court. *See* 28 U.S.C. § 1367(c)(3). "[G]enerally 'when all federal claims are dismissed before trial, the balance of considerations

16

usually will point to dismissing the [S]tate law claims." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record and because the case remains in its early stages, the Court declines to exercise its discretion to retain supplemental jurisdiction over Plaintiff's State-law claim. Therefore, the Court **DISMISSES** the State-law claim **WITHOUT PREJUDICE**.

## IV. Supplemental Authority

Plaintiff filed a notice of supplemental authority to advise the Court of the Southern District of Ohio's recent decision in *Siefert v. Hamilton County Board of Comm'rs.*, No. 27-cv-511, 2026 U.S. Dist. LEXIS 177 (S.D. Ohio Jan. 2, 2026). (ECF No. 35.) Plaintiff argues that this case "reinforces and adds additional specificity" to the Sixth Circuit's opinion in that case, *Siefert v. Hamilton Cnty.*, 951 F.3d 753 (6th Cir. 2020), which was "cited. . . and argued in detail" in her papers opposing Defendants' motions for judgment on the pleadings. (ECF No. 35, PageID #409.)

As relevant here, in *Siefert*, the Sixth Circuit reversed the district court's dismissal of due-process claims under Section 1983 where a county and a hospital refused to discharge a teenager at the request of her parents when their insurer refused to pay for the stay. 951 F.3d at 761. At the pleading stage, the Sixth Circuit ruled, the plaintiff alleged State action on the part of the hospital. The complaint pled a "close nexus" between the hospital and the county because they "worked in tandem[,]" "remained in constant contact, relied on each other for keeping [the minor]

17

at the hospital, and at various times gave the [parents] conflicting statements about who would make the ultimate decision to discharge [the minor]." *Id.*, at 760.

On remand, the district court took up competing motions for summary judgment. Following discovery, the district court determined that the facts in the summary-judgment record "practically mirror those that the Sixth Circuit cited in the *Siefert* decision as ones that would qualify the relationship between [the hospital] and the [c]ounty as symbiotic." 2026 U.S. Dist. LEXIS 177, at *26. The district court determined that the defendants who "collaborated" with the county "became [S]tate actors." *Id.*, at *26–27. However, for the defendants whom plaintiff failed to "tie . . . in a meaningful way to the coordinated efforts between" the hospital and the county, the district court determined that they did not qualify as State actors. *Id.*, at *27.

While *Siefert* is instructive for analyzing State action at both the motion to dismiss and summary judgment stages, the allegations in this case differ materially and substantially from those in *Siefert*. Plaintiff has not alleged collaboration between the MetroHealth Defendants and the County Defendants. Indeed, the complaint pleads only that Cuyahoga County funds MetroHealth and appoints its board. As the MetroHealth Defendants point out, *Siefert* is distinguishable because Plaintiff "fails to include any factual allegations that Cuyahoga County representatives were involved" in the medical care that the MetroHealth Defendants provided and that gave rise to this dispute. (ECF No. 25-1, PageID #304.) Nothing in the record shows or even implies that the County was involved in the medical decision making at issue; or that the MetroHealth Defendants' decisions were based

18

on directions that they received from the County; or that the MetroHealth Defendants and the County had regular meetings regarding Donna Doe's treatment. In other circumstances or on different facts, some or all of the MetroHealth Defendants might be State actors. But not here.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' motions for judgment on the pleadings (ECF No. 19; ECF No. 25). The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's State-law claim (Claim 4). Further, the Court **DENIES AS MOOT** Plaintiff's *ex parte* motion for leave to file a sur-reply (ECF No. 34).

**SO ORDERED.**

Dated: April 9, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio

19